UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
BOARD OF TRUSTEES OF THE LOCAL )
295/LOCAL 851 – I.B.T. EMPLOYER )
GROUP PENSION TRUST FUND )
　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiffs, )
　　　　　　　　　　　　　　　　　　)
　　vs. )
　　　　　　　　　　　　　　　　　　)
ALLISON FREIGHT MANAGEMENT, LLC )
　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendant. )
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
_____)

**AFFIDAVIT OF NEIL J. SAVASTA
IN SUPPORT OF MOTION FOR
DEFAULT JUDGMENT**

08 CV 1138 (LTS) (RLE)

STATE OF NEW YORK　　)
　　　　　　　　　　　　　ss:
COUNTY OF NEW YORK　)

　　　　NEIL J. SAVASTA, being duly sworn, deposes and says:

　　　　1.　　I am the President of Savasta and Company, Inc. ("Savasta and Company"), a New York corporation which provides consulting, administrative, and actuarial services to employee benefits plans. I am a member of the Society of Actuaries and an Enrolled Actuary, jointly licensed by the United States Department of Treasury and the United States Department of Labor to provide actuarial services to pension funds. I am fully familiar with the facts and circumstances of this case. I make this affidavit in support of plaintiff's motion for a default judgment.

　　　　2.　　Savasta and Company is third-party administrator and actuary to the Local 295/851 – I.B.T. Employer Group Pension Trust Fund ("the Fund"). The Fund was established and maintains a plan ("the Plan") to provide retirement income to employees for whom contributions are made by employers. As such, it is an "employee pension benefit plan," within the meaning of Section 3(2) of ERISA, 29 U.S.C. §§1002. The Plan

is maintained pursuant to one or more collective bargaining agreements between employee organizations and various employers, which require such employers to contribute to the Fund. As such, the Fund is a "multiemployer plan," within the meaning of Section 3(37) of ERISA, 29 U.S.C. §§1002(37). A copy of the Fund's Trust Agreement is attached hereto as Exhibit "A."

3.      Defendant Allison Freight Management, LLC ("Allison Freight") was a party to a collective bargaining agreement with Local 295 of the International Brotherhood of Teamsters. Pursuant to the collective bargaining agreement, defendant Allison Freight was required to contribute to the Fund. Savasta and Company received these contributions on behalf of the Fund. As such, defendant Allison Freight is an "employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5).

4.      In or around June of 2007, our office learned that Allison Freight had ceased all operations covered under the Plan on or about January 1, 2007. As such, Allison Freight effected a "complete withdrawal" from the Plan within meaning of Section 4203(a) of ERISA, 29 U.S.C. §1383(a). Allison Freight's complete withdrawal from the plan obligated it to pay withdrawal liability pursuant to Section 4201 of ERISA, 29 U.S.C. §1381.

5.      Upon learning that Allison Freight had completely withdrawn from the Plan, Savasta and Company calculated the withdrawal liability owed to the Fund. The Fund calculates withdrawal liability according to the "presumptive method" set forth in Section 4211(b) of ERISA.

6.      Allison Freight's withdrawal liability was calculated to be $64,682.00. By letter dated June 21, 2007, I notified Allison Freight that it had withdrawn from the Fund,

2

calendar quarter, as reported by the Board of Governors of the Federal Reserve System. The rate in effect is published at the website of the Pension Benefit Guaranty Corporation and may be found at http://www.pbgc.gov/practitioners/interest-rates/content/hr1130.html. The total interest due in the instant case is $3,895.00, based on a rate of 8.25% for the period September 12, 2007 through December 31, 2007 ($1,736.77), a rate of 7.25% for the period January 1, 2008 through April 30, 2008 ($1,169.19), and a rate of 6.00% for the period April 1, 2008 through June 30, 2008 ($989.04).

12.    Pursuant to Sections 502(g)(2)(c) and 4301(b) of ERISA, 29 U.S.C. §§1132(g)(2)(c) and 1451(b), liquidated damages shall be recovered at an amount equal to the greater of interest on the unpaid contributions or twenty percent of the withdrawal liability.  In the instant case, liquidated damages amounts to $12,936.40, twenty percent of the principal withdrawal liability.

13.    The amount of costs and attorneys fees, more fully set forth in the accompanying affidavit of counsel for the Fund, is $7,273.75.

WHEREFORE, plaintiff respectfully request that this court enter judgment in the amount of $88,787.15 against Allison Freight Management, LLC and any other trades or businesses under common control with Allison.

_Neil J. Savasta_
Neil J. Savasta

Sworn to before me this
/_7_ day of July, 2008

_Sara Martin_
Notary Public

Sara Martin
Notary Public - State of New York
No. 02MA6162168
Qualified in Kings County
Commission Expires 3/5/2011

4

EXHIBIT A 1

# AGREEMENT AND DECLARATION OF TRUST ESTABLISHING THE LOCAL 295/LOCAL 851 - IBT EMPLOYER GROUP PENSION FUND

THIS AGREEMENT AND DECLARATION OF TRUST, effective as of the date set forth below, establishing the LOCAL 295/LOCAL 851 - IBT EMPLOYER GROUP PENSION FUND ("Fund"), by and between THOMAS P. PUCCIO and JACK J. RUGGIERO on behalf of Local 295 - IBT; CURT A. OSTRANDER and ALEXANDRA POPE on behalf of Local 851 - IBT; and ALAN G. BLUMBERG,  RICHARD G. GOODWIN, _____, and ALFRED N. TOLAN, on behalf of the employers contributing to the Fund ("Employers") (collectively, the "Trustees").

## W I T N E S S E T H

WHEREAS, the Employers have executed, and may from time to time hereafter execute, collective bargaining agreements with Local 251 - IBT and Local 851 - IBT that, among other things, require periodic Employer contributions to the Fund;

WHEREAS, to effectuate the aforesaid purpose, this Agreement and Declaration of Trust, the assets of which are to be used for the exclusive purpose of providing pension benefits to employees of the Employers eligible to participate in the Fund and their beneficiaries, was established effective April 6, 1953 and amended from time to time (the "Existing Agreement"); and

WHEREAS, the Trustees now desire to amend and restate the Existing Agreement to restate, inter alia, the powers, duties, authorities and responsibilities of the Trustees.

NOW, THEREFORE, for and in consideration of the premises and mutual covenants herein contained, and other good and valuable consideration (receipt of which is hereby acknowledged), it is hereby mutually understood and agreed by the parties hereto as follows:

ARTICLE 1
DEFINITIONS

Whenever used in this Agreement, unless the context otherwise requires, the following words shall have the respective meanings set forth below:

1.1    Administrator.  The Board or any individual(s) authorized by the Board to administer the Fund.  The Board, and not the Administrator, shall be the "administrator" (as defined in ERISA section 3(16)(A)) of the Fund.

1.2    Agreement. This Agreement and Declaration of Trust, as amended from time to time, which establishes the funding vehicle for the Fund and sets forth the respective rights, obligations and responsibilities of the Administrator, the Board, and the Trustees.

1.3    Beneficiary.  The person or entity, if any, entitled under the terms of the Plan to receive benefits under the Plan following the death of the Employee.

1.4    Board.  The individuals from time to time acting collectively as the Board of Trustees under this Agreement, which shall also be the "named fiduciary" (as defined in ERISA section 402(a)(2), and the "administrator" (as defined in ERISA section 3(16)(A)) of the Fund, appointed to control and manage the operation and overall administration of the Plan and the Trust.

1.5    Code.  The Internal Revenue Code of 1986, as amended, and all rules and regulations promulgated pursuant thereto.

1.6    Collective Bargaining Agreement.  Any collective bargaining agreement between an Employer and either Union (or, where the Employer is the Fund, the Welfare

3

Fund, or either Union, a written document in the form acceptable to the Trustees) requiring contributions to be made to the Fund on behalf of Employees.

      1.7    <u>Committee</u>.  A committee duly appointed and authorized by the Board pursuant to this Agreement.

      1.8    <u>Effective Date</u>.  The date on which this Agreement is fully executed as set forth herein.

      1.9    <u>Employee</u>.  An individual who is the employee of an Employer who is covered under the terms of a Collective Bargaining Agreement.  The Board shall have the sole and absolute discretion to verify whether an individual is an employee of an Employer by applying a common-law test.

      1.10    <u>Employer</u>.  An employer required to contribute to the Fund on behalf of Employees pursuant to a Collective Bargaining Agreement.

      1.11    <u>Employer Trustee</u>.   Each individual designated as an Employer Trustee under Section 3.3 and, when acting as a Trustee, his or her alternate or successor.

      1.12    <u>ERISA</u>.  The Employee Retirement Income Security Act of 1974, as amended, and all rules and regulations promulgated pursuant thereto.

      1.13    <u>Fund</u>.  The Local 295/Local 851 - IBT Employer Group Pension Fund, established to pay benefits to eligible individuals in accordance with the terms of the Plan.

      1.14    <u>Investment Manager</u>.  Any person or entity appointed by the Board to manage, acquire or dispose of any portion of the Trust Fund who is (1) an investment manager registered in good standing under the Investment Advisers Act of 1940; (2) a bank (as defined in said Act) located within the United States; or (3) an insurance company qualified

4

under the laws of more than one state to manage, acquire or dispose of employee benefit plan assets.

      1.15   <u>Local 295</u>. Local 295, affiliated with International Brotherhood of Teamsters, AFL-CIO.

      1.16   <u>Local 851</u>. Local 851, affiliated with International Brotherhood of Teamsters, AFL-CIO.

      1.17   <u>Plan</u>. The Local 295/Local 851 - IBT Employer Group Pension Plan, as it may be amended from time to time, which sets forth the written rules and regulations governing the payment of benefits to Employees and Beneficiaries under the Fund, and which shall be funded from the Trust.

      1.18   <u>Trust or Trust Fund</u>. All cash, securities and other property which at the time of reference has been deposited in the trust account established pursuant to this Agreement.

      1.19   <u>Trustee(s)</u>. The individual Employer Trustees, the individual Union Trustees and, when acting as Trustees, their alternates and successors.

      1.20   <u>Union(s)</u>. Individually, Local 295 or Local 851; collectively, Local 295 and Local 851.

      1.21   <u>Union Trustee</u>. Each individual designated as a Union Trustee under Section 3.3 and, when acting as a Union Trustee, his or her alternate or successor.

      1.22   <u>Welfare Fund</u>. The Local 295/Local 851- IBT Employer Group Welfare Fund.

5

ARTICLE 2
## NAME, PURPOSE AND OPERATION OF TRUST

2.1    <u>Name</u>.  The Trust shall be known as the "Local 295/Local 851 - IBT

Employer Group Pension Trust."

2.2    <u>Purpose</u>.

(a)  The Trust is established for the exclusive purpose of providing pension benefits to

Employees under the Fund, and shall further provide the means for financing and

maintaining the operation and administration of the Fund.

(b)  Except as provided in paragraph (c) below, it shall be impossible at any time

prior to the satisfaction of all liabilities with respect to Employees and their Beneficiaries

under the Fund for any part of the Trust Fund, other than such part as is required to pay

taxes, fees and expenses of the administration and operation of the Fund, to be used for

purposes other than for the exclusive benefit of Employees or their Beneficiaries.

(c)  In the event that any Employer contribution to the Fund has been made (i) by a

mistake of fact, or (ii) conditioned upon the deductibility thereof under Code section 404,

and all or a part of such deduction has been disallowed; then the Board may, in its sole

discretion, and in accordance with any written rules and procedures that it may establish,

return such contribution (or the value thereof, if less) to the Employer prior to the expiration

of six months after a determination by the Administrator as to (i) above, or one year

following the disallowance of the deduction under (ii) above (but only to the extent of the

disallowance).  The Employer shall have the burden of proving that any contribution was

made by mistake.

6

2.3    Operation.

(a)    The Trust shall be established and operated in accordance with ERISA and Code section 501(a).  To the extent that anything in this Agreement is inconsistent with ERISA or the Code, this Agreement shall be deemed amended to implement the purposes of this Trust while continuing to comply with the requirements of the ERISA and the Code.

(b)    The Trust shall also be established and operated as a "jointly-administered" pension fund within the meaning of, and in accordance with, section 302(c) of the Labor Management Relations Act of 1947, as amended.

2.4    Participation by Contributing Employers.  An Employer may participate in the Fund by executing a Collective Bargaining Agreement requiring contributions to be made to the Fund, submitting the Collective Bargaining Agreement to the Board for its acceptance of the participation of such Employer and Employees in the Fund, and receiving such acceptance by the Board.

2.5    Obligations of Contributing Employers.  Upon the Board's acceptance of an Employer's participation in the Plan and Trust, the Employer shall be deemed to have agreed to all provisions of this Agreement and the Plan, including future amendments to the Agreement and the Plan, and shall be deemed to have agreed to be bound unconditionally to the Plan and Trust and to all of the decisions of the Board.

7

ARTICLE 3
TRUSTEES

3.1    Composition of Board. The Board of Trustees shall consist of four (4) Employer Trustees and four (4) Union Trustees, two (2) of whom shall be appointed by Local 851 and two (2) of whom shall be appointed by Local 295; provided, however, that at least one Union Trustee appointed by Local 295 shall be a member of Local 295.

3.2    Acceptance of Trust and Trusteeship. The Trustees appointed hereunder accept the Trust created and established by this Agreement and consent to act as Trustees thereof by assuming the responsibility for the operation and administration of the Trust.

3.3    Initial Trustees. The current Employer Trustees shall be Alan G. Blumberg, Richard G. Goodwin, John T. Murray, and Alfred N. Tolan. The current Union Trustees designated by Local 295 shall be Thomas P. Puccio and Jack J. Ruggerio. The current Union Trustees designated by Local 851 shall be Curt A. Ostrander and Alexandra Pope.

3.4    Term of Office. Each Trustee shall continue to serve as such until his or her death, incapacity to serve hereunder, resignation or removal.

3.5    Resignation. A Trustee may resign, and shall be fully discharged from further duty or responsibility under this Agreement to the extent permitted by law, by giving at least thirty (30) days' advance written notice to the Board (or such shorter notice as the Board may accept as sufficient) stating a date when such resignation shall take effect. Such resignation shall take effect on the date specified in the notice or, if a successor Trustee has been appointed effective as of an earlier date, on such earlier date.

3.6    Removal. An Employer Trustee may be removed at any time by a unanimous written decision of the other Employer Trustees delivered to the Administrator. A Union

8

Trustee may be removed at any time by the Union that appointed him or her by written notice to the Administrator signed by an authorized representative of the Union that appointed him or her.

   3.7    Successor Trustees.

   (a)  In the event that any Employer Trustee dies, becomes incapable of acting hereunder, resigns, or is removed, the Employer Trustees then in office shall by majority vote designate a successor Employer Trustee by written notice delivered to the Administrator.

   (b)  In the event that any Union Trustee dies, becomes incapable of acting hereunder, resigns, or is removed, an authorized representative of the Union that appointed him or her shall designate a successor Union Trustee by written notice delivered to the Administrator

   (c)  A copy of the written appointment of each successor Trustee shall be provided in writing to the Administrator as soon as practicable after the appointment, and each successor Trustee shall signify his or her acceptance of the trusteeship either in writing delivered to the Administrator or in person at the first Board meeting that he or she attends following his or her appointment.

   3.8    Alternate Trustees.

   (a)  Each Employer Trustee may designate an alternate Trustee to serve as his or her alternate, and Local 295 and Local 851 may each designate an alternate Trustee to serve as alternate for any Union Trustee that each of them has designated, in the same manner that successor Trustees are designated under Section 3.7 above.  Upon acceptance of such appointment by an alternate Trustee either in writing to the Administrator or in person at the first Board meeting that he or she attends following such appointment, such designation shall

9

remain effective until such alternate's death, incapacity to serve hereunder, resignation or removal.

(b)  An alternate Trustee may resign by giving a written notice stating a date when such resignation shall take effect to his or her designating entity, in the case of the Union Trustees, and to the remaining Employer Trustees, in the case of an Employer Trustee, and to the Administrator; such resignation shall take effect on the date specified in the notice. An alternate Trustee may be removed at any time in accordance with Section 3.6 above.

(c)  Each alternate Trustee shall be entitled to attend each Board meeting (and each meeting of any Committee to which the regular Trustee of which he or she is an alternate has been appointed), and, in the absence of any regular Trustee for whom he or she has been designated as an alternate Trustee, to count toward the Trustee quorum requirements and cast the vote of such regular Trustee at such meeting, which vote shall for all purposes hereof be deemed to have been cast by such regular Trustee.  No alternate Trustee may act as alternate for more than one Trustee at any meeting.

10

## ARTICLE 4
## POWERS AND DUTIES OF TRUSTEES

4.1    Receipt of Payments.  The Board (or such other person or entity acting on behalf of, and duly authorized by, the Board) is authorized to receive contributions made to the Fund in accordance with the terms of the Plan, and is vested with all right, title, and interest in and to such contributions and earnings thereon.  The Board agrees to receive all such contributions and to hold them in trust for the purposes of the Trust and the Plan.

4.2    Payment of Benefits.  The Board shall pay out of the Trust, at the time and in the manner specified in the Plan, the benefits provided for in the Plan.

4.3    Investments.  Notwithstanding any limitations imposed generally by any present or future state law concerning investment by trustees, the Board shall have the authority, in its sole and absolute discretion:

(a)  To retain in its original form any and all property delivered or transferred to it, and from time to time to invest and reinvest all or any part of the Trust Fund in such bonds, debentures, promissory notes, common or preferred stocks, with or without par value, real estate, and other additional property that the Board shall deem proper;

(b)  To invest in an undivided interest or undivided interests, in common with any other trust or trusts, however created, or any other individual or individuals, including investments in so-called "common funds," or in partnerships or joint ventures, operated or created by any person, trust, or corporation.  The records of the Board shall at all times show the Trust's interest in the corpus of and the income from each such common

11

investment, common fund, partnership or joint venture and the interest of each investor as to both corpus and income;

(c)  To sell, exchange, assign, transfer or otherwise dispose of all or any of the Trust Fund at public or private sale, with authority to grant options for the purchase thereof;

(d)  To acquire any real estate or estate in land by purchase or lease, or as a result of any foreclosure, liquidation, or other salvage of any investment previously made, or otherwise; to improve, develop, manage, administer, or operate any real estate that is part of the Trust Fund; to construct, alter, repair or reconstruct, wreck or remove buildings, structures or improvements on such real estate; to settle boundary lines and easements and other rights with respect to such real estate; and to partition and to join with co-owners and others in dealing with such real estate in any way;

(e)  To vote, in person or by proxy, any stock or other properties having voting rights; to exercise any options, rights, or privileges pertaining to any portion of the Trust Fund; to participate in, support, or oppose any liquidation, merger, re-organization or consolidation affecting any portion of the Trust Fund, and in connection therewith take any action which an individual could take with respect to property owned outright by such individual;

(f)  To retain any portion of the Trust Fund in cash or in property returning no income or slight income as long as the Board deems such action to be in the best interest of the Trust;

(g)  To register any investment held in the Trust Fund in the name of the Board or the name of a nominee or nominees, or to retain them unregistered or in a form permitting

transferability by delivery, but the books and records of the Board shall at times show that all such investments are part of the Trust Fund;

(h)   To renew or extend, or participate in a renewal or extension of, any debt or mortgage upon such terms as may be deemed advisable by the Board, and to agree to a reduction in the rate of interest thereon or to any other modification or change in the terms thereof or of any guarantee pertaining thereto; to waive or enforce any default whether in the performance of any guaranty; and to exercise or enforce all rights or remedies with respect to any debt, mortgage or guarantee;

(i)   To apply for, purchase, receive, retain, administer, surrender, transfer or assign any life insurance, retirement income, endorsement or annuity policy or contract, and pay the premium and exercise the rights, privileges, options and benefits contained in any such contract; and

(j)   To organize corporations, partnerships, and/or joint ventures under the laws of any jurisdiction to acquire and hold title to any part of the Trust Fund.

4.4     General Powers.   In addition to any authority given to the Board by law and by the Plan, the Board shall have the following powers and duties without application to any court or authority therefor:

(a)   To administer the Plan and Trust in accordance with the provisions of the Plan and this Agreement;

(b)   To adopt rules and regulations necessary for the administration of the Plan and Trust, provided the rules are not inconsistent with the terms of the Plan and this Agreement;

(c)  To prepare, execute, file and retain a copy of all reports required by law that the Board deems necessary or appropriate for the proper administration and operation of the Plan and Trust;

(d)  To pay all real and personal property taxes, income taxes, and other taxes of any and all kinds levied or assessed under existing or future laws against the Trust or the Board in connection with the administration of the Trust;

(e)  To open and maintain accounts in savings banks, commercial banks, and other banking institutions or depositaries and to manage such accounts as the Board deems advisable;

(f)  To compromise, submit to arbitration or settle any debt or obligation owing to or from the Trust; to enforce or abstain from enforcing any right, claim, debt or obligation; to bring or defend suits or legal proceedings to protect or enforce any interest in the Trust; and to represent the Trust in suits or legal proceedings in connection with any matter in any court or before any administrative agency;

(g) To take any actions, including the filing of requests for determinations, rulings and other forms of administrative guidance, with the United States Department of Labor, the Internal Revenue Service, or the Pension Benefit Guaranty Corporation;

(h)  To lease or purchase such premises, materials, supplies and equipment, and retain such administrative, secretarial, clerical, and other assistance or employees as the Board or the Administrator may deem necessary or proper (subject to paragraph (i) below), and to pay their reasonable expenses and compensation and all other expenses attributable to the operation of the Plan out of the Trust;

14

(i)  To retain and compensate out of the Trust Fund counsel (who may be counsel to any Employers or to either Union), investment advisers, accountants, actuaries, appraisers, contractors, consultants, property managers, insurance brokers and other persons or entities that the Board deems necessary or appropriate for the administration of the Plan and the Trust; provided, however, that the Trustees may not directly or indirectly compensate either Union or any Union officer, or any Employer or employee of an Employer, for services provided by them to the Trust;

(j)  To appoint custodians or ancillary or subordinate trustees to hold title to or other indicia of ownership of Trust assets, and to define the scope and responsibilities of each such custodian or ancillary or subordinate trustees;

(k)  To establish and implement a funding policy for the Fund and create, accumulate and maintain as part of the Trust Fund such reserves as the Board determines to be prudent or desirable in connection with the sound and efficient administration of the Plan and the Trust;

(l)  To enter into agreements with other plans and trusts providing for the reciprocity of pension credits and portability of pension accruals between the Fund and such other plans and trusts;

(m)  To make, execute and deliver all conveyances, waivers, releases or other instruments in writing that the Board deems necessary or desirable for the accomplishment of any of the foregoing powers;

(n)  Generally, to perform all acts and make all such expenditures (whether or not expressly authorized herein) that the Board deems necessary and prudent for the protection of the Trust Fund and administering the affairs of the Plan and Trust.

4.5    <u>Delegation and Allocation of Duties</u>.

(a)  The Board may engage an Administrator to conduct the day-to-day operations of the Plan and the Trust and may delegate such of its administrative duties to such Administrator as the Board deems advisable.

(b)  The Board may delegate to other persons the duties involved in the operation and administration of the Plan and Trust under the direction of the Board (other than trustee duties, as defined in ERISA section 405(c)(3)) to the extent consistent with ERISA.

(c)  The Trustees may enter into agreements among themselves allocating their responsibilities, obligations and duties with respect to the administration of the Plan and the management and control of the Trust; provided, however, that the remaining Trustees comprising the Board shall not be liable for any loss resulting to the Trust resulting from the acts or omissions of those Trustees accepting the allocation of such specified fiduciary responsibilities (except as may otherwise be required by ERISA);

4.6    <u>Compensation</u>.  The Trustees shall not receive any compensation from the Trust for the performance of their duties as Trustees, but shall be reimbursed from the Trust Fund upon written request to the Administrator for all reasonable, actual and necessary expenses they incur in the performance of their duties as Trustees.    All requests for reimbursement shall be accompanied by documentation verifying such expenses and shall be submitted no later than one year from the date on which the expense was incurred.

4.7    <u>Committees</u>.

(a)  The Board may delegate one or more of its fiduciary responsibilities to one or more committees each of which shall be comprised of an equal number of Employer Trustees

EXHIBIT A 2

and Union Trustees.  The Employer Trustees shall designate Employer Trustees to such

Committee and the Union Trustees shall designate Union Trustees to such Committee.

(b)  Except as otherwise provided by ERISA, to the extent that such responsibilities

are so delegated, the remaining Trustees comprising the Board shall not be liable for any loss

resulting to the Trust resulting from the acts or omissions of the Committee.

4.8    Board as Recordkeeper.  Unless otherwise delegated to another person, the

Board shall act as a master recordkeeper for the Plan and Trust, and its records shall

constitute the official records of the Plan and Trust for all purposes.  The Board shall

maintain true and accurate books of account and records of all its transactions, which shall be

open to the inspection of each Trustee, each Employer and either Union at the principal

office of the Trust at all reasonable times, and which shall be examined at least annually by a

certified public accountant selected by the Board.

4.9    Standard of Care.  The Board shall discharge its duties under this Agreement

with the care, skill, prudence and diligence under the circumstances then prevailing that a

prudent person acting in a like capacity and familiar with such matters would use in the

conduct of an enterprise of a like character and with like aims, and shall diversify all assets

to avoid the risks of large losses (unless, under the circumstances, it is clearly prudent not to

do so), consistent with ERISA and the Code.

4.10    Reliance on Written Instruments and Advice of Professionals.

(a) Each Trustee shall be fully protected in acting upon any instrument, certificate, or

paper believed by the Trustee to be genuine and to be signed or presented by a duly

authorized person or persons, and shall be under no duty to make any investigation or

17

inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the truth and accuracy of the statements therein contained.

(b) Each Trustee shall be entitled to rely conclusively upon, and shall be fully protected in any action he or she takes in good faith in relying upon, any opinions or reports furnished to the Trustee by any actuary, accountant, attorney, consultant or specialist appointed or designated by the Board in connection with the administration of the Plan and Trust.

4.11    Indemnification. Except as may otherwise be required by ERISA, the Code, or other applicable law:

(a) No Trustee shall be personally answerable for any liabilities or debts of the Trust incurred by him or her as a Trustee, but such debts and liabilities shall be paid out of the Trust Fund, except for liabilities or debts arising from the Trustee's own fraud or willful misconduct;

(b) No Trustee shall be personally liable for any error of judgment or for any Claim (as defined in paragraph (c) below) arising out of any act or omission by the Trustee or for any acts or omissions of any other Trustee, except for acts or omissions arising from the Trustee's own fraud or willful misconduct;

(c) The Trust shall protect, indemnify and hold harmless the Trustees and the Administrator (and their employees and other agents) from and against any and all liabilities, damages, penalties, expenses, costs and claims (collectively referred to as "Claims") incurred by any such person(s) as a result of any act, omission or conduct committed in good faith by such person(s) in connection with the performance of his or her powers, duties, responsibilities or obligations under the Plan, the Trust, this Agreement, ERISA, the Code or

18

other applicable laws, except with respect to Claims arising from such person's own fraud, bad faith, or willful misconduct, or except as otherwise reimbursed by insurance.

4.12    Bonding. Any person required to be bonded under the provisions of ERISA, including the Trustees, Administrator, Investment Managers, custodians and any other employees, agents or other representatives of the Trust handling Trust assets or otherwise entrusted with any portion of the Trust Fund, shall be bonded under a fidelity bond issued by an insurance carrier in the amount required by ERISA section 412. The cost of premiums for such bonds shall be paid out of the Trust Fund.

4.13    Fiduciary Insurance. To the extent not precluded by ERISA, the Trust shall purchase and maintain a policy or policies of fiduciary liability (or errors or omissions) insurance for the Trust, the Trustees, the Administrator and, if the Trustees so decide, any other person to whom a fiduciary responsibility with respect to the Trust has been allocated or delegated to protect such persons against any and all Claims arising out of a fiduciary's breach of his or her fiduciary responsibility to the Trust (the proceeds of which may be used to satisfy the obligations of the Trust set forth in Section 4.11).

4.14    Discretionary Authority. Except as may otherwise be provided in this Agreement or in the Plan, the Plan and Trust shall be administered and operated exclusively by the Board (or the Administrator or any Committee duly authorized by the Board), which shall have complete authority, in its sole and absolute discretion, to construe the terms of the Plan and this Agreement (and any related documents and underlying polices or regulations), including the authority to determine the eligibility for, and amount of, benefits due under the Plan to Employees or their Beneficiaries. All such decisions shall be final and binding upon all parties affected thereby.

19

4.15    <u>Execution of Documents</u>.  The Board may authorize any Union Trustee and any Employer Trustee (or any group composed equally of Union and Employer Trustees), or the Administrator, to execute any instruments in writing.  Any such instrument so signed shall have the same force and effect as though signed by the Board.   The Board may also authorize an employee or employees of the Fund to sign documents or checks upon such separate and specific bank account or bank accounts as the Board may designate and establish for such purpose.

4.16    <u>Investment Manager</u>.

(a)  The Board may appoint one or more Investment Managers to exercise full investment management authority with respect to all or a portion of the Trust Fund and may authorize payment of the fees and expenses of such Investment Manager from the Trust Fund.  Upon its appointment, each Investment Manager shall certify and acknowledge in writing to the Board that it is a fiduciary with respect to the Plan and Trust, and that it has assumed the duties and responsibilities conferred upon it by the Board.  The duties, responsibilities, and authority of any Investment Manager may be revoked or modified by the Board at any time by written notice to such Investment Manager.

(b)  Any Investment Manager appointed by the Board shall, during the period of its appointment, possess fully and absolutely those powers, rights and duties of the Board (to the extent delegated by the Board and to the extent permissible under the terms of this Agreement) with respect to the investment or reinvestment of the portion of the Trust Fund over which such Investment Manager has investment authority.

(c)  During the period of the Investment Manager's appointment, and with respect to those assets of the Trust Fund over which such Investment Manager has investment

20

management authority, the Board's responsibility shall be limited to holding such assets as a custodian, providing accounting services, disbursing benefits as authorized and executing such investment instructions only as directed by such Investment Manager. The Board shall not be responsible for acts or omissions of such Investment Manager. Any instruments duly signed by such Investment Manager (or the authorized representative of such Investment Manager) purporting to evidence any instruction of such Investment Manager with respect to the investment of those Trust assets over which the Investment Manager has investment management authority shall be accepted by the Trustees as conclusive proof thereof. The Board shall be fully protected in acting in good faith upon any document believed by the Board to be genuine and to be by such Investment Manager (or authorized representative of such Investment Manager). The Trustees shall not be liable for any action taken or omitted by such Investment Manager or for any mistakes of judgment or other actions made, taken or omitted by the Trustees in good faith upon direction of such Investment Manager.

ARTICLE 5
MEETINGS AND DECISIONS OF TRUSTEES


5.1    Officers.  The Board shall elect one Employer Trustee and one Union Trustee

to serve as Co-Chairs effective as of the Effective Date and each January 1 thereafter.  Such

Co-Chairs shall serve until the following December 31 or, if later, the effective date on

which their successor Co-Chairs assume office.  A Co-Chair may be re-elected for one or

more terms.

5.2    Calling of Meetings.

(a)  The Board shall endeavor to meet at least quarterly, and at such other times as

the Board may reasonably decide; except that either Co-Chair may call a special meeting of

the Board at any time by giving at least seven (7) days advance written notice (or such

shorter notice as is agreed to by the remaining Trustees) of the time and place thereof to the

other Co-Chair and all other Trustees.

(b)  Any three (3) Trustees may call a meeting of the Trustees at any time by giving

at least fifteen (15) days advance written notice (or such shorter notice as is agreed to by the

remaining Trustees)  of the time and place thereof to the other Trustees.

(c)  Participation by one or more Trustees at a meeting of the Board (or any

Committee) by means of a conference telephone or similar communications equipment

allowing all persons participating in the meeting to hear each at the same time shall constitute

presence at a meeting for purposes of this Article 5.

(d)  The Administrator (or his or her duly authorized designee) shall maintain minutes

of all Board and Committee meetings, but such minutes need not be verbatim.  Copies of

22

such minutes shall be provided to all Trustees and to such other parties as the Trustees may designate.

5.3    Quorum.  Three (3) Employer Trustees and three (3) Union Trustees shall constitute a quorum for the purpose of transacting business at all Board meetings.

5.4    Vote of Trustees.

(a)  All action of the Board shall be by majority vote of the quorum and must include the concurring vote of at least three (3) Union Trustees and three (3) Employer Trustees.

(b)  The vote of any absent Trustee may be cast by his or her alternate, or in accordance with a written proxy delivered to any other Trustee present at the meeting.

(c)  In addition to decisions made at meetings, each Trustee may also be polled with respect to an issue by the Administrator or either Co-Chair (or his or her designee) either in writing or by telephone without the necessity of having a meeting; provided, however, that any action to be taken with respect to such issue must be carried by unanimous vote of all Trustees and any decision made pursuant to a telephone poll must be ratified at the next Board meeting.

(d)  In the event that a deadlock occurs, the matter shall be resolved by arbitration (as provided in Section 5.5).  A deadlock shall mean either:

(i) the failure to decide any matter presented for decision by the Board due to three (3) or more Employer Trustees either voting in favor of or abstaining from voting with respect to the matter (unless the abstention is due to a conflict of interest) and three (3) or more Union Trustees either voting against or abstaining from voting with respect to the matter (unless the abstention is due to a conflict of interest), or vice versa, or

(ii) the lack of a quorum at two successive meetings.

23

5.5    Arbitration.

(a)  In the event that the Trustees are unable to decide a matter due to a deadlock among the Trustees, the Board shall select an impartial arbiter and the Co-Chairs shall submit the matter for decision to the arbiter selected.  If the Board is unable to agree on an arbiter within fifteen (15) days after the deadlock arose, any two (2) Trustees may petition the American Arbitration Association - Labor Section in New York City (the "AAA") for the appointment of an arbitrator, who shall be selected by the Trustees pursuant to the rules and regulations of the AAA.    In the event that the Trustees do not agree on an arbitrator within a reasonable length of time, an arbitrator shall be selected by the United States District Court for the Southern District of New York upon the petition of any two (2) or more Employer Trustees or two (2) or more Union Trustees.  The arbitrator's decision shall be final and binding on all parties.  The arbitrator's decision shall be final and binding on all parties.

(b)  All reasonable expenses of the arbitration shall be paid from the Trust.

24

## ARTICLE 6
## ALLOCATION OF RESPONSIBILITIES

6.1     The Administrator.  Where the Administrator is a person other than the Board, the Administrator shall have the responsibility and authority to control the administration of the Plan and Trust, subject to the terms of this Agreement, the Plan, any written agreement between the Board and the Administrator, and any policies, procedures and other rules that may from time to time be established by the Board.

6.2     The Board.  The Board shall have the authority and responsibility for the overall operation of the Plan and Trust and the investment of the Trust Fund (except to the extent that such responsibility has been delegated by the Board to an Investment Manager), including:

(a)  Design of the Trust, including the right to amend, modify or terminate this Agreement at any time;

(b)  Design of the Plan, including the right to amend, modify or terminate such Plan at any time;

(c)  Qualification under applicable law of the Plan and the Trust;

(d)  Designation of fiduciaries of the Trust and Plan; and

(e)  Exercise of those fiduciary functions provided for in the Plan or this Agreement and of all other functions that the Board deems necessary and appropriate for the prudent operation and administration of the Plan or Trust, and the protection of the Trust Fund (except such functions as are delegated to a Committee, the Administrator, an Investment Manager, or to other fiduciaries of the Trust or the Plan).

25

ARTICLE 7
PAYMENTS TO THE FUND

7.1    Rate of Contributions.  The Employers shall contribute to the Fund the amount required by the applicable Collective Bargaining Agreement.  Nothing in this Agreement shall be deemed to alter any of the provisions of any such agreements.

7.2    Duration of Contributions.  All contributions shall be made effective as of the date specified in the Collective Bargaining Agreement and shall continue to be paid as long as the Employer is so obligated pursuant to a Collective Bargaining Agreement.

7.3    Due Date for Contributions.  Employer contributions are due no later than the due date for such contributions as set forth in the applicable Collective Bargaining Agreement or, if the Collective Bargaining Agreement does not specify a due date for contributions, the last day of the month immediately following the month in which the services for which contributions are payable to the Fund occurred.

7.4    Default in Payment.

(a)  In the event that any Employer fails to make required contributions to the Fund when due, the Board may, in its sole and absolute discretion, terminate the participation of the Employer in the Plan and Fund and the provision of service credit to employees of such terminated Employer.  Nothing in this Section 7.4(a) shall affect the Board's right to assert and enforce any and all other rights against such Employer for the collection of any delinquent Employer contributions to the Fund.

(b)  A delinquent Employer shall be liable for all costs and expenses incurred in effectuating its contributions or other payments due to the Fund, including but not limited to:

26

    (1)    arbitration expenses;

    (2)    attorneys' fees;

    (3)    court costs;

    (4)    all reasonable costs and expenses attributable to any audit of the Employer's payroll, wage and related business records with respect to unpaid contributions; and

    (5)    interest equal to the annual prime rate of interest quoted in The New York Times as of the date on which the Employer's contributions were due and payable to the Fund (or the next business day if that date is not a business day), plus five percent.

7.5    <u>Enforcement Actions</u>.  In addition to any other remedies to which the Board may be entitled under any Collective Bargaining Agreement, the Board may initiate whatever actions or proceedings may be proper in its sole and absolute discretion for the enforcement of an Employer's contribution obligations in accordance with the terms of this Agreement or any other rules or guidelines promulgated by the Board.

7.6    <u>Payments Required by Court Award</u>.  In any action under this Article 7 in which a judgment is awarded by a court in favor of the Fund, the Plan, the Trust, or the Board, the Employer shall pay to such party, in accordance with the court's award, the following amounts:

(a) all unpaid contributions due and payable; plus

(b) interest on such unpaid contributions, computed in accordance with Section 7.4; plus

27

(c)  an amount equal to the greater of (i) interest on the unpaid contributions (computed in accordance with Section 7.4) or (ii) 20 percent of the unpaid contributions; plus

(d)  reasonable attorneys' fees, costs of the action, reasonable expenses attributable to any audit of the Employer's payroll, wage and related business records with respect to unpaid contributions, and any other related expenses; plus

(e)  such other legal or equitable relief as the court deems appropriate.

7.7    No Waiver of Other Rights.

(a)  The failure of any Employer to make contributions to the Trust when due shall not relieve any other Employer of its obligations to make contributions to the Fund.

(b)  Nothing in this Article 7 shall be construed as a waiver of or limitation on the right of the Fund, the Plan, the Trust, or the Board to enforce an Employer's contribution obligation in any other type of proceeding, and the provisions of this Article 7 shall be without prejudice to the rights of either Union to enforce the provisions of any agreement to which they are a party.

7.8  Remittance Reports and Audits.

(a)  The Employers shall make contributions to the Fund, together with remittance reports, in such form and manner as may be required by the Board.  The Board (or its authorized representatives) may at any time make an audit of the payroll, wage, and related business records of any Employer with respect to the contributions and/or reports which it is obligated to make to the Fund.  Each Employer shall make available to the Board (or its authorized representatives) all records deemed necessary by such persons to determine the accuracy and completeness of such contributions and reports.

28

(b)    In the event that the Board determines that the Employer has been delinquent in remitting contributions to the Fund, and the aggregate amount of such delinquency, plus all accrued interest thereon and the cost of the audit, exceeds 20% of the actual audited amount determined by the Fund's auditors to be due to the Fund, the Board may charge an Employer with all reasonable costs and expenses attributable to the audit.

29

ARTICLE 8
## AMENDMENT; TERMINATION; AND TRANSFER OF ASSETS

8.1    <u>Amendment</u>.  This Agreement or the Plan may be amended by the Board at any time and in any manner; provided that no amendment shall be made that shall divert the Trust Fund to any purpose other than that of providing pension or related benefits or result in the return or diversion of any part of the Trust Fund to any Employer.

8.2    <u>Termination</u>.

(a)  The Trust and the Plan may be terminated:

(i)  at any time, by a vote of the Board;

(ii)  by a written instrument executed by Local 295, Local 851 and by Employers responsible for 50% or more of the contributions paid to the Fund by Employers during the six (6) month period immediately preceding the submission of such instrument; or

(iii)  automatically, in the event that the obligation of all Employers to make contributions to the Fund terminates or there are no assets remaining in the Trust.

(b)  In the event of the termination of the Trust, the Board shall apply the assets of the Trust to pay for all of the Trust's obligations and apply any remaining surplus in a manner consistent with this Agreement, the Plan, ERISA, the Code and any other applicable law; provided, however, that in no circumstances shall any portion of the corpus or income of the Trust Fund revert or accrue to the benefit of any Employer or either Union.

(c)  Upon termination of the Trust, the Board shall immediately notify the Unions and each Employer, the Administrator, Investment Managers, and other service providers and necessary parties, and the Trustees shall continue to act as Trustees for the purpose of

30

winding up the affairs of the Trust. The Board may take any action with regard to insurance policies or group contacts that may be required by the insurance carrier and that the Trustees, in their discretion, deem appropriate.

       8.3    Transfer of Assets.

       (a) The Board may issue instructions from time to time directing that all or a portion of the Trust Fund shall be transferred to another trust established and maintained for the custody or investment of assets of the Trust.

       (b) The Board may transfer any portion of the Trust Fund to another pension fund established or maintained by any employer for employees or former employees who were participants in the Plan on such terms and under such conditions as the Board may determine; provided, however, that no merger or consolidation with, or transfer of assets and liabilities to, any other pension plan or trust, shall be effective unless each Employee affected by such action would (if the Plan or Trust then terminated) receive a benefit immediately after the merger, consolidation, or transfer equal to or greater than the benefit that he or she would have been entitled to receive immediately prior to the merger, consolidation or transfer (if the Plan or Trust had then terminated).

       (c) Pursuant to the election of a distributee of any "eligible rollover distribution" (as defined in Code section 401(a)(31)), the Administrator shall direct the transfer of assets of the Fund that represent all or part of such "eligible rollover distribution" in the amount of $500 or more directly to an "eligible retirement plan" (as defined in Code section 401(a)(31)). All transfers under this Section 8.3(c) shall be made in accordance with Code section 401(a)(31) and the regulations thereunder.

ARTICLE 9
ACCOUNTS OF THE BOARD

9.1     <u>Board to Maintain Trust Accounts.</u>  Unless otherwise delegated to the

Administrator or another entity or person, the Board shall:

(a)  Act as a master recordkeeper for the Fund, and its records shall constitute the

official records of the Plan and Trust for all purposes;

(b)  Maintain true, accurate and detailed books of account and records of all its

transactions, which shall be examined at least annually by a certified public accountant

selected by the Board; and

(c)  Maintain such information as will enable the Board to determine the fair market

value all assets of the Trust.

9.2     <u>Board to Submit Information.</u>  The Board shall submit to the auditors for the

Trust Fund and to the actuaries for the Plan such valuations, reports and other information as

they may reasonably request.

9.3     <u>Annual Financial Report.</u>  Upon the request of any Employer or either Union,

the Board shall furnish such requesting Employer or Union with a copy of the annual report

of a financial audit of the Fund, as performed by an independent certified public accountant.

9.4     <u>Valuation.</u>  All Trust assets on any business day shall be valued at fair market

value, computed in accordance with such commercially acceptable valuation method or

methods determined by the Board, with prudence and in good faith, to reflect their current

fair market value.

32

ARTICLE 10
MISCELLANEOUS

10.1    Choice of Law.  This Agreement and the Trust Fund shall be construed in accordance with the laws of the State of New York applicable to contracts made and to be performed within the State of New York (without regard to any conflict of laws provisions), to the extent that such laws are not pre-empted by ERISA (or any other applicable laws of the United States).

10.2    Titles and Plurals.  Titles, headings, and subheadings for sections and paragraphs are inserted for the convenience of reference only, and this Agreement shall not be construed by reference to them.  Wherever required by context, the singular of any word used in this Agreement shall include the plural and the plural may be read in the singular.

10.3    Service of Process.  The Trustees are hereby designated as agents for service of legal process on the Fund, the Trust or the Plan.

10.4    Definitions.  All words and phrases defined in the Plan shall have the same meaning in this Agreement, except as otherwise expressly provided herein.

10.5    Notices.  Unless otherwise specified in this Agreement, all notices contemplated by this Agreement shall be deemed duly given when delivered in writing to the addresses below or when deposited by first-class mail addressed as follows:

(a)    To the Board:

Board of Trustees
Local 295/Local 851-1BT Employer
  Group Pension Fund
1 Dag Hammarskjold Plaza
20th Floor
New York, NY 10017

33

(b)    To the Administrator:

Mr. Neil J. Savasta, Administrator
Local 295/Local 851-1BT Employer
  Group Pension Fund
1 Dag Hammarskjold Plaza
20th Floor
New York, NY 10017

or to such other addresses as any of the foregoing parties, or individual Trustees, shall

subsequently instruct the other parties; provided that any notice provided by the

Administrator to the Board shall be sent to each Trustee at the last address provided by the

Trustee to the Administrator. Any notice or other communication shall be deemed to have

been given to, or received by, the appropriate party as of the date on which it is personally

delivered or sent by facsimile or, if mailed, on the first (1st) business day after the date of

the postmark applied by the United States Postal Service.

10.6    Severability. If any provision of this Agreement (or any amendment hereto) is

held contrary to any provision of law, or shall for any reason be invalid, then such provision

shall be enforced only to the extent not contrary to law or invalid; shall be deemed severable

from the remaining provisions of this Agreement; and shall in no way affect the validity or

enforceability of the other provisions of this Agreement or the rights of the parties hereto.

10.7    Entire Agreement. This Agreement sets forth the entire agreement of the

parties to this Agreement with respect to the subject matter of this Agreement, is intended to

be the complete and exclusive statement of the terms hereof, and may not be modified or

amended except pursuant to Section 8.1.

10.8    Construction. No provision of this Agreement shall be construed so as to

violate the requirements of ERISA, the Code, or other applicable law.

34

10.9    No Assignment of Benefits.  Except with respect to qualified domestic relations orders, as defined in ERISA section 206(d)(3), or as may otherwise be provided in ERISA or the Code, no benefit payable under the Fund shall be subject to alienation, sale, transfer, assignment, pledge, attachment or encumbrance of any kind until paid to the Employee or Beneficiary.

10.10   Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which shall be considered the same instrument.  The signature of a party on any counterpart shall be sufficient evidence of the party's execution thereof.


IN WITNESS WHEREOF, the undersigned do hereby cause this instrument to be executed as of the last date set forth below.


_____          Date:_____
ALAN G. BLUMBERG

_____          Date:_____
RICHARD G. GOODWIN

_____          Date:_____
JOHN T. MURRAY

_____          Date:_____
CURT OSTRANDER

_____          Date:_____
ALEXANDRA POPE

_____          Date:_____
THOMAS P. PUCCIO

_____          Date:_____
JACK J. RUGGERIO

_____          Date:_____
ALFRED N. TOLAN

10.9    No Assignment of Benefits.  Except with respect to qualified medical child support orders, as defined in ERISA section 609(a)(2)(B), or as may otherwise be provided in ERISA or the Code, no benefit payable under the Fund shall be subject to alienation, sale, transfer, assignment, pledge, attachment or encumbrance of any kind until paid to the Employee or Beneficiary.

10.10    Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which shall be considered the same instrument.  The signature of a party on any counterpart shall be sufficient evidence of the party's execution thereof.


IN WITNESS WHEREOF, the undersigned do hereby cause this instrument to be executed effective as of the last date set forth below.


ALAN G. BLUMBERG                         Date:    3/16/95

RICHARD G. GOODWIN                       Date:    3/16/95


JOHN T. MURRAY                           Date:

ALFRED N. TOLAN                          Date:    3/16/95

CURT OSTRANDER                           Date:    5/18/95

ALEXANDRA POPE                           Date:    3/16/95

THOMAS P. PUCCIO                         Date:    3/16/95

JACK J. RUGGERIO                         Date:    3/16/95

EXHIBIT B

# LOCAL 295/LOCAL 851-IBT

- **EMPLOYER GROUP PENSION TRUST FUND**
- **EMPLOYER GROUP WELFARE FUND**



60 BROAD STREET, 37TH FLOOR • NEW YORK, NY 10004 • (212) 308-4200

June 21, 2007

**CLRTIFIED/RETURN RECEIPT**
Ms. Linda Allison
Allison Freight Management
P.O. Box 38695
Greensboro, NC  27438

RE: **Withdrawal Liability**

Dear Ms. Allison:

According to our records, SAF Sales Handling Corp. (the "Company") ceased its obligation to contribute to the Local 295/Local 851 Pension Fund (the "Fund") as of January 31, 2007. As a result, the company has effected a complete withdrawal from the Fund, within the meaning of Section 4203(a) of the Employee Retirement Income Security act of 1974, as amended ("ERISA"). Consequently, the Company is subject to the payment of withdrawal liability to the Fund and, in accordance with the requirements of Section 4202 and 4219(b)(1) of ERISA, the Board of Trustees of the Fund hereby makes demand for payment of withdrawal liability, as described below.

The values derived in Exhibits A were determined on the basis of the June 30, 2006 actuarial valuation of the Plan performed for the purpose under assumptions utilized for withdrawal liability purposes.

In accordance with Section 4219(c)(2) of ERISA, payment of withdrawal liability to the Fund is required to commence no later than 60 days after the date of this Notice, "notwithstanding any request for review or appeal of determinations of the amount of such liability." Thus, the Company's initial quarterly withdrawal liability payment is due on September 1, 2007. Payment of withdrawal liability should be made directly to the order of the Local 295/Local 851 Pension Fund and forwarded to the address noted above.

Failure to commence payment of withdrawal liability or to make timely subsequent payments, as required under ERISA, will constitute "default" within the meaning of Section 4219(c)(5) of ERISA, and will entitle the Fund to require immediate payment of the full amount of withdrawal liability owed to the Fund by the Company, plus accrued interest. The Fund will assess such default penalties on the entire amount of the Company's withdrawal liability, as well as any court costs and attorneys' fees incurred in collecting such delinquency.

Under Section 4219(b)(2)(A) of ERISA, the Company has the right, within 90 days after the receipt of this Notice, to:

    (1)    Request the Trustees to review any specific matter relating to the determination of the Company's withdrawal liability and the schedule of payments described herein;

    (2)    Identify any inaccuracy in the determination of the amount of unfunded vested benefits allocable to the Company; and

    (3)    Furnish any additional relevant information to the Trustees.

Pursuant to Section 4221 of ERISA, any dispute arising out of the Fund's determination and review must be resolved through arbitration. Either party may initiate the arbitration proceeding herein within a 60 day period after the earlier of:

    (a)    the date of the Fund's notification to the Company under Section 4219(b)(2)(B) of ERISA, or

    (b)    120 days after the date of the Company's request under Section 4219(b)(2)(A) of ERISA.

Under Section 4219(c)(2) of ERISA, the Company must commence payments demanded

herein in accordance with the terms and schedule set forth above, notwithstanding any

request for review or appeal of determinations

Pursuant to Section 4219(a) of ERISA, it is hereby requested that the Company advise the undersigned, within 30 days of the date of this Notice, whether the Company is or was a member of a trade or business "under common control" within the meaning of Sections 414 and 153 of the Internal Revenue Code of 1986, as amended (i.e., a "controlled group"). If the Company is or was a member of a controlled group, it is hereby requested that the Company furnish the undersigned with the corporate (or business) names and addresses of each organization within the controlled group. Please also note whether any of these organizations contributed to the Fund at any time.

If you have any questions, please contact the undersigned.

                    Very truly yours,

                    Savasta and Company, Inc.
                    Administrators

            By: _____
                    Neil J. Savasta

NJS:eq                 President

Cc:  Larry Cary

# LOCAL 295/LOCAL 851-IBT

- **EMPLOYER GROUP PENSION TRUST FUND**
- **EMPLOYER GROUP WELFARE FUND**



60 BROAD STREET, 37TH FLOOR • NEW YORK, NY 10004 • (212) 308-4200

## NOTICE OF WITHDRAWAL LIABILITY

| | | |
|---|---|---|
| Participating Employer | : | Allison Freight Management |
| Amount of liability | : | $64,682 |
| Payment Schedule | | |
| Payment commencement due date | : | September 1, 2007 |
| Initial payment amount due quarterly | : | $2,025.85 |
| Number of payments at initial quarterly amount | : | 38<br>September 1, 2007<br>through<br>December 1, 2016 |
| Final payment due March 1, 2017 | : | $1,857.13 |

EXHIBIT A

## ALLISON FREIGHT MANANGEMENT
### With a Withdrawal Date of January 31, 2007

1. Present Value of Total Vested Accrued Benefits of the Plan as of June 30, 2006

$516,312,962

2. Fund Assets as of June 30, 2006 (including withdrawal liability receivable from previously withdrawn employers)

380,438,121

3. Unfunded Vested Benefits as of June 30, 2006 (1) – (2)

135,874,841

4. Contributions Made by Allison Freight During 5 Years Ending June 30, 2006

28,690

5. Aggregate Fund Contributions During 5 Years Ending June 30, 2006

36,311,630 *

6. Portion of Withdrawal Liability Attributable to Allison Freight (4) / (5)

0.00079

7. Allison Freight Unadjusted Withdrawal Liability (6) x (3)

107,341

8. Less: De Minimis Reduction

(-) 42,659

9. Withdrawal Liability for Allison Freight Management

$ 64,682

* Excluding, as prescribed by statue, contributions made by withdrawn employers during this period.

EXHIBIT C

# LOCAL 295/LOCAL 851-IBT

- **EMPLOYER GROUP PENSION TRUST FUND**
- **EMPLOYER GROUP WELFARE FUND**



60 BROAD STREET, 37TH FLOOR • NEW YORK, NY 10004 • (212) 308-4200

September 7, 2007

**CERTIFIED/RETURN RECEIPT**
Ms. Linda Allison
Allison Freight Management
PO Box 38695
Greensboro, NC 27438

Dear Ms. Allison:

Your quarterly withdrawal liability installment payment in the amount of $2,025.85 payable September 1, 2007 is now past due.

Please be advised that failure to make payment within the next sixty (60) days shall constitute default under Section 4219(c)(5) of the Employee Retirement Income Security Act. Failure to cure this failure to make your payment will result in legal action which will add interest, liquidated damages and costs of collection to the principal amount owed.

The Pension Fund has no obligation and will not bill you on a quarterly basis. It is your responsibility to make timely payments. Please make payment to the Local 295/Local 851 Pension Fund without further delay. Thank you for your immediate attention to this matter.

Sincerely,

Savasta and Company, Inc.
Administrators

By: _____

NJS:eq

Neil J. Savasta
President

cc: Larry Cary, Esq.

C:\Documents and Settings\eqazbr.SAVASTA\My Documents\NJS\LOC295\WithLiab_plsNotices.doc